Good morning everyone. The first case on the call of the docket this morning is Agenda No. 1, Case No. 125124, People of the State of Illinois v. Antonio House. The appellant, Ms. Gopi Kashyap. Good morning, Your Honors. May it please the Court, I am Gopi Kashyap on behalf of the People of the State of Illinois. There are two claims before the Court, an as-applied constitutional challenge to the mandatory natural life sentencing statute and an actual innocence claim. The trial court dismissed both claims as legally insufficient at the second stage of post-conviction proceedings. Based on the factual allegations and supporting documentation the defendant had presented in his amended petition, the appellate court reversed the dismissal of the sentencing claim finding that applying the mandatory natural life sentencing statute to the defendant violated the proportionate penalties clause of our Constitution. On the actual innocence claim, the appellate court affirmed the dismissal of that claim. The People have appealed the grant of post-conviction relief on the mandatory natural life sentencing claim and defendant has sought cross relief on the actual innocence claim. This case has a long history and the case has been on appeal for quite some time. And during that time, there have been intervening decisions and actions by the parties that warrant a remand here, Your Honors, for defendant to go back to the circuit court and do second stage proceedings on his two claims. He can amend the petition and present evidence to support his sentencing claim. And as he states in his briefs, Eunice Clark's affidavit is from 2001. And given the intervening decisions in Robinson and Sanders, we think the circuit court should have the first opportunity to take a look at that claim. And so we ask the court to vacate the appellate court's judgment on both claims and remand for second stage proceedings on those two claims. So turning first to defendant's as-applied constitutional challenge to the mandatory sentencing statute. In the trial court, defendant's as-applied claim rested solely on the trial record. He did not cite any extra record, factual allegations, or supporting documentation. He rested only on the trial record and Leon Miller. And he argued based on that trial record that his sentence was unconstitutional, that the mandatory sentencing statute was unconstitutional as applied to him. The trial court dismissed that claim as legally insufficient. On appeal, defendant amended his claim. He added extra record, factual allegations to support the claim. He argued not just based on the trial record, but on scientific research concerning juvenile maturity and brain development that the United States Supreme Court had cited in Graham v. Florida, in Roper v. Simmons, and in Miller v. Alabama to support his claim. So the claim on appeal that he raised was different than the one that he raised in the trial court. And that claim on appeal rested on extra record, factual allegations that he had never presented to the trial court. Nevertheless, notwithstanding that he had never presented those factual allegations, the appellate court found, based on those very factual allegations, that defendant, as a young adult, was entitled to the protections offered to juveniles, and found that the mandatory natural life sentence is unconstitutional as to defendant. That holding on the undeveloped record was clear error under this Court's decision in Harris. There had been no factual findings as to how the scientific research the defendant cited on appeal applies to defendant's factual circumstances. There has been no evidentiary development of that claim. This is the same as it was in Harris. And defendant recognized this. This Court already remanded to the appellate court to reconsider or to consider the effect of Harris on defendant's penalties claim. On remand, defendant and the people filed an agreed motion recognizing the effect of Harris on that claim. The effect was that defendant had not developed the claim. And so the parties agreed that the case should go back to the circuit court so defendant could support that claim. In Harris, this Court recognized that the Post-Conviction Hearing Act is the appropriate tribunal to develop these types of claims that rest on extra record facts, and that is what the parties agreed to. But nevertheless, the appellate court granted relief. And so we asked the court to do the same thing that we asked the appellate court to do in the first instance, allow defendant to develop his claim at the second stage of proceedings in the circuit court with this extra record of factual allegations that he never presented. But to the extent defendant is pressing the claim based solely on the trial record that the trial court dismissed as legally insufficient, the trial court's decision was correct. This Court's precedent has repeatedly held that the legislature is authorized to mandate life imprisonment for adults who are principals, accomplices, and who are convicted of first-degree murders. In Leon-Miller, this Court specifically observed that it had the courts had upheld against penalties provision challenges, mandatory life sentences for adult accomplices. And there has been only one instance where this Court has ever determined that the legislature has clearly exceeded the penalties provision by mandating life imprisonment for murder. Recall that this is a life imprisonment sentence for two hung sites. And so the only case that this Court has ever said that that is impermissible under our Constitution is Leon-Miller. But defendant is nothing like Leon-Miller. His facts are very different. There were a number of factors that converged to form the basis for this Court's decision in Leon-Miller, but none of those are present here. Unlike Leon-Miller, defendant was not subject to criminal prosecution and sentencing rather than juvenile adjudication solely due to a mandatory transfer statute. But because he was an adult at the time that he committed these crimes, relatedly, defendant, unlike Leon-Miller, was not 15 years old, such that his age has carried constitutional significance under our Constitution for over 100 years. And finally, unlike Leon-Miller, defendant was not an unarmed passive accomplice with one minute to contemplate his actions. You know, Leon-Miller and Davis, and this Court has confirmed in Leon-Miller and Davis that our Constitution permits life imprisonment for offenders who are active participants in the planning and commission of multiple of crimes that result in multiple murders. And that is what happened here. Defendant, the facts show the defendant knew that there was a strong probability of the victims being shot. He armed himself. This was a planned attack. His, Ted, R2's thick man, his nickname was Ted. Ted and Fred Weatherspoon observed the two victims on Ted's spot. He said, Ted gestured that he'd be back. He returned about 10 minutes later with this group of 10 men. They were all armed. They surrounded the victims. Fred commented that the reason for this was because they had taken over Ted's spot. Ted remarked that the victims were about to make the news. And defendant admitted that he knew that the victims might be shot. Nevertheless, he drove two miles to the location where the victims had been taken. It was a junkyard. And he, once he got there, he asked and confirmed whether the victims were in the junkyard with the members who were shooting them. And he parked his car and he acted as a lookout. Most critically, he didn't stop there. Afterwards, he, a month later, he continued to, his participation and involvement with these crimes, or agreement with them, by intimidating Eunice Clark with force into not testifying in court. And so this case is nothing like Leon Miller. Defendant's participation level was much greater than that. And his natural life sentence is consistent with our Constitution. It better relies on the recent legislative enactments where the legislature is taking a look at young adults and their brain development and making changes to our statutory provisions. Counsel, isn't the real concern here that the defendant received a mandatory life sentencing and he really was just acting as a lookout? Well, the problem is he didn't just act as a lookout. He participated from the onset. This was a planned offense. This was a kidnapping and murder plot. It was not just his actions during the murder itself. He had armed himself to make sure that these victims would be kidnapped. The purpose of the kidnapping was to send a message. The record shows that the day before these offenses, the rival faction led by Willie Lloyd had stolen drugs and money from Ted. And so that was defendant's faction. And defendant was a cocaine distributor for his gang. He was involved in the sale of drugs. He had three convictions for drug-related crimes. He was an active participant and has shared the motive of Ted and his fellow gang members. And so once Ted saw the victims on his spot, the next day after Willie Lloyd had already stolen his drugs and money, they collectively decided that they needed to send a message, and he participated in that. He did arm himself. He did go with his fellow members. They were all armed. There's no chance that he didn't know that these offenders, these victims were going to be harmed with weapons. And, in fact, Fred put a weapon into the car and may have shot. And so defendant certainly knew what was going to happen to these victims. And he had an opportunity to withdraw at that point after the kidnappings. Nevertheless, he continued. He drove two miles to the junkyard, decided to make sure that the police did not catch on to what was happening. And most importantly afterwards, he continued to be involved in the crimes by intimidating the main witness. And so collectively, he was not merely a lookout. More importantly, he was also an adult. And under our law, he was an adult who was an active accomplice, and this Court has held in those circumstances that a mandatory life sentence is appropriate, where it results in the commission of two murders. Is this a facial challenge or as applied? It's an as-applied challenge. His defendant's argument is that applying the mandatory sentencing statute to his circumstances violates our Constitution. So he's not asking for a rule, or he's not even he's not saying that the mandatory natural life sentence is facially unconstitutional. And we don't think that he could. This Court has held for facial challenges that if a statute can be constitutionally applied to circumstances, then it's not facially invalid. And, of course, it can be applied to adult principles. It can be applied to older adults. It can be applied to adults in general. Roberts. The appellate court rejected your agreement to send this back for second stage proceedings. The appellate court said that this would be a duplication of proceedings that have already taken place. But now you're again asking this Court to send it back for second stage. Why is it not a duplication of something that's already taken place? Well, it's not a duplication because the claim the defendant raised on appeal was different than the claim that he raised in the trial court. So this Court in Harris cited Cherry and Thomas. And in those cases, when we take a look at them, it is, for example, if this was a conflict of interest claim. A conflict of interest claim that rests solely on the trial record is one type of claim. But if the conflict of interest claim rests on extra record judicial or factual allegations or supporting documentation, then a defendant who relies solely on the trial record in making his claim, and that is the claim that the trial court rejects, when he goes on appeal, he can't then support that claim, the facts that were never alleged in the trial court or presented. And so if a claim rests on extra record factual allegations, things outside the record that were never presented, and that is what's happening here, then the defendant can't be entitled to relief on appeal for the first time. Well, yeah, but that was the issue with Harris because Harris was a direct appeal. This is a post-conviction claim where the defendant is supposed to raise these things in the post-conviction proceeding. And if he doesn't, then he's got to file a successive petition. And this Court could hold that. It could hold that because his claim was premature and he did not allege that in his post-conviction petition, he should be his relief is through the successive post-conviction procedure. The people agreed with defendant, given just the posture of this case, which had these Harris' intervening decision where Harris, where this Court remanded to consider the effect of Harris on his claim, and the people agreed that he should just be given that opportunity. And so we're adhering to that agreement now. But certainly the Court could deny relief based on that version of the claim because defendant had an opportunity to cite the scientific research at the time he was in the trial court. Going back to the as-applied or facial challenge, actually it's a challenge to the constitutional issue here, because if it's applied, it's applied to everybody under this situation. It's a mandatory legislation. So it isn't as applied as facial. It's about the mandatory sentencing, isn't it? Well, there are two different types of claims that this Court has said. I think it drew the distinction in Harris, which is that the challenge is to the statute itself. And the statute itself can be challenged in two ways. On its face, meaning can it be applied to anyone, right? And doesn't this apply to everyone? And it can. Right. And it can constitutionally apply to everyone. The mandatory natural life sentencing statute does apply to anyone who is convicted of multiple murders. And so on its face, that's who the statute applies to. And a defendant, if he were to raise a facial challenge to that statute, would fail because we know from this Court's precedent that the mandatory natural life sentencing statute can apply to offenders constitutionally, adult principals, adult accomplices, as this Court has held. This Court has repeatedly held that the mandatory natural life sentencing statute can constitutionally be applied to a set of offenders. And so, therefore, it's not facially invalid. So then the question and the claim the defendant is raising is whether applying that mandatory sentencing statute to his personal circumstances, to his conduct, whether that violates the Illinois Constitution. And so he's raising a claim that the statute is unconstitutional as applied to him. And to do that, he needs to prove that. And in the appellate court, he relied on scientific research to support that claim, claiming that he was a young adult, but that he should be treated like a juvenile. And that's the claim on which the appellate court granted relief. And we think erroneously because there was no record support or even allegations in the trial court to support it. Basically, you're asking that it be remanded so the defendant can amend his pleadings. Yes. Because pleadings are in line with what's going on now, correct? Yes. There have been – he relied on Miller in the appellate court, which hadn't been released at the time of his post-conviction proceedings. We'll note that the scientific research upon which he relied had preexisted. Miller, and it was cited in Graham, and it was cited in Roper. But there has been research since that point. I think there's been articles that have been cited, and there has been research. And so we are asking the court to allow him to go back down. We thought it was the best procedure in the appellate court, and we still think he should be entitled to do that now. At one point, there was an agreement between the parties. It wasn't there, too. Yes, there was. We agreed in the appellate court, in lieu of supplemental briefing, to seek summary disposition from the appellate court following this Court's supervisory order based on Harris. So that is what we're asking for now. And so turning quickly to the legislative enactments, as we noted, this is evolving in the legislature, and the legislature is considering the effect, the signs that defendant has relied on. But as recently as 2019, when it did consider this, the legislature has not extended the protections that it affords juveniles to young adults entirely, and especially those who commit multiple murders. It hasn't required the consideration of youth-related factors for all young adults, as it has for juveniles. It hasn't removed the mandatory firearm enhancements for young adults, as it has for juveniles. It hasn't reduced the mandatory minimum term of imprisonment for young adults who are convicted of multiple murders, as it has for juveniles. And it hasn't provided young adults who are convicted of multiple murders an opportunity for parole, as it has for juveniles, or young adults who are convicted of less serious offenses. At bottom, Your Honor, defendant's actions were not those of a passive accomplice or someone who had no opportunity to contemplate his participation in the offenses, and our legislature continues to believe that young adults should be treated, like other adults, whenever it authorizes or requires a sentence of natural life imprisonment. So if defendant is pressing his claim, the one that he raised in the trial court, then it fails under this Court's precedent, and this Court should vacate the appellate court's judgment and affirm his sentence. Thank you, Your Honor. Okay. Thank you, Ms. Koshup. Ms. Lauren Ann Bowser, you may proceed. Good morning, Your Honors. May it please the Court. This is an appeal from Antonio House's timely filed initial post-conviction petition. Can you state your name for the record? Lauren Bowser from the State Appellate Defender. This is a petition that was amended and dismissed at the second stage a decade ago. In the 10 years that Antonio's petition or appeal has been pending, subsequent decisions from the United States Supreme Court, from this Court, and subsequent legislative enactments have confirmed and provide additional support for his allegations that both of his ‑‑ both his sentencing claim and his actual innocence claim were wrongly dismissed at the second stage. The State does not contest that this Court's recent decisions in Harris and Robinson require further proceedings in the trial court on both of his claims. The only dispute is what that ‑‑ what that should look like on remand, what this Court's direction to the trial court should be. As I will discuss, there's no legal basis for the State's request that both of these claims go back for second stage proceedings. Rather, this Court should remand for a new sentencing hearing where the record in this case demonstrates that Antonio's mandatory life sentence without the possibility of parole for a crime he committed as a teenager, as a teenage lookout, who wasn't even present at the time of the killing, shocks the conscious. It grossly distorts the factual realities of the case, and it does not accurately represent his personal culpability. So it shocks the moral sense of our community under evolving standards of decency. The State ‑‑ excuse me. And further, because Antonio's petition made a substantial showing of actual innocence, this Court should, based on the recantation of the State's key witness, Eunice Clark, this Court should remand for an evidentiary hearing on that claim. I just want to briefly take the claims out of order and address the innocence claim. The State has provided no reason why this claim should not be remanded for an evidentiary hearing. It doesn't contest that the ‑‑ excuse me, that the claim is wrongly dismissed under an improper standard. When a defendant makes a substantial showing under the Post-Conviction Hearing Act, the remedy is to advance the claim to the third stage. It hasn't explained why this Court should disregard the three stages of the act and send the claim backwards, specifically on the innocence claim. And turning to the sentencing claim, the State argues that the claim has been amended. It hasn't. Antonio's post‑conviction petition made a proportionate penalties claim based on Leon Miller. His claim there was that Leon Miller was a 15‑year‑old accomplice. I was a 19‑year‑old accomplice. And under evolving standards in our society, I'm only a few years older. The analysis in Leon Miller should apply to me. Now, of course, a proportionate penalties analysis is based on evolving standards. So in the 20 years since this Court's decision in Leon Miller, the law and our standards have evolved. And there's objective indicia net from this Court's decision, the United States Supreme Court's decision, and from our legislature. Since Antonio's claim was dismissed, this Court has addressed whether a teenager can seek relief under the proportionate penalties clause in Thompson v. Harris. This Court hasn't yet addressed the proportionate penalties analysis since Leon Miller with respect to a teenage accomplice. But this Court did say in Thompson v. Harris that even a teenager who was a shooter in those cases, the defendants personally shot two people, they might even be able to seek relief under the proportionate penalties clause if they could show that our standards of decency had evolved. And since this Court's decision in Harris, the legislature has actually made three different changes to sentencing statutes that are applicable to youth under 21. As the State points out, none of those are directly applicable to Mr. House's case. That's exactly what the proportionate penalties clause is here for, for cases where a mandatory sentence or a legislatively mandated sentence is nonetheless shocking under the facts of the case. So what this Court looked at to Leon Miller, of course, was the fact that this was a teenager who acted at the direction of older gang members and didn't personally kill anyone. Antonio's circumstances are very similar. He's not a juvenile, of course. He's a few years older than Leon Miller. But do you ask that this Court consider that analysis and, along with all of the other objective indicia that in 20 years since Leon Miller, we do now recognize that teenagers, even teenagers who are not juveniles, are more amenable to rehabilitation and less culpable. Counsel, as it relates to the evolving standards, I'm sure you would agree that this would guide us in those evolving standards. Specifically in Buffer, we relied very heavily on the legislative enactments. Here we have the 2019 change in the law that says if you're under 21, you get a parole hearing for certain offenses. But the legislature explicitly excluded your client from that protection. Correct. So why shouldn't we look to the legislature for guidance as it relates to that evolving standard? Well, because what we look to is the legislature's, you know, view on the culpability here. I mean, our alleged society that says you can personally murder someone and be up for parole after 20 years. This other individual who did nothing but, you know, look out is not. That's disproportionate. So we look to what the legislature has done with respect to where our standards are going, how the law is evolving. But, of course, if it was directly applicable, we wouldn't need the constitutional provision under the proportionate penalties clause. That clause exists for cases, you know, the legislature isn't going to cover every single situation where possibly a sentence is shocking. And that's what we have here. And it's similar to what this Court did in Leon Miller. There that was a mandatory sentence under the law at the time. And the Court said, yes, but look at, you know, what we've done in the other context with juveniles. We think this juvenile shouldn't have gotten a sentence. And this Court can do the same thing here. Yes, these laws that the legislature has made that extend up to 21, he doesn't follow directly in that, much like Leon Miller didn't. But we can look at that as evidence of our society's evolving standards. And as to follow through on that question, how do we know how society is evolving, I think is my question. We know that in the United States Supreme Court cases, they relied very specifically on a huge body of research of brain science. When I read the appellate court opinion here, the court there relied on two articles, two newspaper articles. Is that sufficient evidence for any court to make the kind of judgment that you're asking us to make? Well, I think that what we have here is, you know, we've got all of this scientific research that both parties have cited. And we have evidence that our legislature has incorporated that into the sentencing laws. So when we're looking at, it's already in some ways been accepted by our legislature that this category, these under 21-year-olds, are less culpable and should get some form of sentencing relief. And I would also point, you know, this Court allowed it to be cited as additional authority, a recent decision from the Washington State Supreme Court. And I think that's helpful to look at for this idea that the science overwhelmingly compels the conclusion that the brain continues developing well into the 20s. The only real debate is how should the law implement that? I mean, the state argues that it's not a well-accepted principle, but really that the articles that the state cites talk more about how not every single 19- to 21-year-old or 18- to 21-year-old is going to be deserving of leniency. And the Washington State Supreme Court there said that because we need to be able to look at the individual characteristics of people in this age class, it's the mandatory nature of the sentencing that is a violation of the Constitution in that case. And that's what we have here. The sentencing judge in this case did find mitigation. The Court found that the fact that Antonio was just a lookout and the fact that he was a teenager was mitigating. They found that he found facts in his background was mitigating. But the Court's hands were tied. He could do nothing but sentence him to mandatory natural life. So this isn't a case where Antonio had a sentencing hearing where this Court can look back and say the judge clearly considered his youth, but the crime was so horrific that, you know, it wouldn't have done anything, you know, like this Court did recently in Lusby and Holman. This isn't a case where we can tell from the record that the judge there wouldn't have exercised discretion to give Antonio a sentence less than natural life if he had that option. So, again, it's the mandatory nature of the sentencing scheme that is unconstitutional as applied to a teenage lookout. Did the appellate court have to look to information outside the record in order to reach the decision they did? So, you know, the State argues that, yes, there's outside-the-record information. And that's not correct. We are relying on the same facts that were in Antonio's petition. Factual – there's no new facts being introduced. What's new is the evolution of the law and evolution of secondary legal authority since the claim was dismissed a decade ago. Those aren't new facts. Those were all facts that were before the trial court. Sotomayor was that presented to the Court? Excuse me? Was that presented to the Court, this information? I mean, obviously nothing that, you know, has come off since the case was dismissed 10 years ago. But, again, Leon Miller didn't look at brain science. He didn't look at specific factual findings about brain science. He looked at just general understanding of what we know about society. And so that's how the petition raised – sorry, that's how the claim was raised in the petition. And this Court has recognized that a legal claim can evolve if case law evolves. I cited in the cross-reply, the Court's decision is casmeric, where it acknowledged that the State had an evolving theory on its apprendee claim in that case, which evolved with this Court's jurisprudence. Antonia's claim remains based on Leon Miller. However, this Court's subsequent decision in Harris, other decisions, and legislative actions just provide further support for his claim that, as a 19-year-old, his sentence is equally unconstitutional as it was for 15-year-old Leon Miller. Are you arguing that a trial court would have the authority to look outside the record and decide that even though the law required a mandatory life sentence, that society had evolved such that it shouldn't impose that sentence? Can they do that? Yes. The proportionate penalties clause requires the judges to look at evolving standards of decency. So we can't not look at, you know, society's evolving standards. Now, I think, if Your Honor is getting at the fact that, you know, we're relying on things that weren't in the petition. That's what I'm concerned about. Right. So both parties have presented evidence here before this Court. Evidence or argument? Sorry? Evidence or argument? Evidence of evolving standards. And I think, you know, the State's position is that the State, the Court needs to make a specific finding on those before this Court can decide whether that's, you know, where our society is and what we accept as shocking now. If this Court finds that those specific factual findings are needed before it can decide that, you know, the legislature, these other court's decisions demonstrate where our society is, we would take the position that an evidentiary hearing is needed, where we've both sides have presented competing scientific research. Third-stage proceedings is where evidentiary development happens. So that's what the State's asking for. They're asking for second-stage proceedings. They would like the case to go back to the pleading stage. But the Post-Conviction Hearing Act allows amendments liberally. And if this Court finds that, you know, the petition needs to be amended for the Court to consider this, that can take place at the third stage under the Post-Conviction Hearing Act. Ultimately, I think we all agree that there needs to be a hearing on this in the trial court. The Court needs to consider how these facts apply to Antonio and whether he deserves leniency. So there's really no reason for it to go back to the pleading stage when this case has been pending for 10 years. All of this can be done at an evidentiary hearing before the circuit court. But the pleadings right now don't raise these things that you're talking about. The pleading does raise a proportionate penalties clause claim based on the Miller. The only thing I think that we're arguing about, what's the effect of these intervening court decisions? Does the court not have the ability to consider, you know, the law, how the law has evolved? So I think, yes, if we're concerned that that's not in the petition right now, that can be amended at the third stage. Because otherwise, the Court would, to a sponte, be amending the pleadings, doing independent research, right? And I think the parties would obviously have a duty to present their positions below, regardless of, you know, exactly what's in the original petition. They would have a duty to make their arguments. And how specifically is that different from the plea that the State is asking for? The second stage? Well, our relief we're requesting is that this Court, of course, find that there's enough in the record under the Ed Miller. But alternatively, where there's a debate over, you know, the facts, you know, this factual, you know, debate about how the science applies, the actual thing is going to be decided at the third stage. So there's no reason to backpedal to the second stage. The State said you entered into an agreement. Was it an agreement to send it back for a second-stage hearing or a third-stage hearing? Yes. After this Court remanded in light of Harris, parties negotiated an agreement and submitted it to the appellate court, seeking a remand for second-stage proceedings and for further compliance with the 16th AMC. Obviously, attempts to resolve a case short of full briefing, there's reasons for parties to do that. They have little to do with the merits. And here, the length of this petition had been pending and the desire to get the case moving, as well as a desire to present a very strong actual innocence claim, little reason for that behind the agreement in the appellate court. The appellate court did not accept that agreement, did not accept, you know, Antonio did not receive the benefit of that bargain. So there's no reason for this Court to find that there was any merits, you know, ruling on that in the appellate court. So if it were remanded back, you could also have your innocence claim addressed as well at the third stage? Yes, we do believe that the innocence claim should go to the third stage. And if, you know, if this Court remands for a third-stage proceeding example, you know, of course we'd be happy. It's just that if this Court finds that the sentence, you know, this Court does an independent duty to decide if the sentence is unconstitutional, and if it finds that it is, it finds that a mandatory sentence under our current laws for an accountable teenager violates the Constitution, the only proper remedy there would be a new sentencing hearing. So this Court could remand for a third-stage evidentiary hearing on the actual innocence claim and a sentencing hearing where all of these things would be considered on the sentencing claim. May I say, just so I'm clear in my mind, your as-applied challenge is certainly we've been discussing the issue about where to draw the line in terms of who is a juvenile and what an emerging adult means. The whole issue about the Supreme Court has drawn the line at 18, and Mr. Howells was 19 at the time. Are you also making another argument about as-applied that the Court should look at the facts of each case and then decide whether or not a mandatory sentence is appropriate or not? Is that what you're asking us to do? Yes. I think there are two related but separate bases that this Court can consider under its proportionate penalties jurisprudence. And under Leon Miller, this Court looks just at the facts of the case. So can you explain to me the legal framework of how a court does that? The legislature says mandatory, and then years later, a court is going to sift through the facts and reject the policy decision made by the legislature based on the facts? How does the Court do that? Well, I mean, obviously, any as-applied challenge is going to be dependent on its facts. The defendant can always argue that the proportionate penalties clause means his case is disproportionate. I think, again, that the Washington State Supreme Court case that we cited deals with this a little and says, you know, because we don't know that these are going to apply in every case, they found that any 19-year-old, any 18-year-old, any 19-year-old with a mandatory sentence would be unconstitutional. But, I mean, short of that, as-applied challenges do require a look at the facts of every individual case. So, you know, that this Court doesn't want to make a broad ruling, you know, a categorical ruling extending Miller. That is how the analysis goes under an as-applied challenge or the proportionate penalties clause. But even if we don't go that far, you're asking us to make an as-applied class of people, are you not, that are 19 years old who do not actually pull the trigger? Accountability, 19 equals proportionate penalty. A successful proportionate penalty. I can think of many examples where that wouldn't be the case. Courts have distinguished Antonio's case. The appellate court has repeatedly distinguished Antonio's case from cases where, you know, maybe the accomplice was more involved. Maybe they were part of a planning, not just ordered by an older or higher-ranking gang member to go stand there as a lookout. There could be cases where the sentencing judge didn't find any mitigating factors in sentencing, like the judge did here. There would be no reason to think, you know, that there are circumstances where even a teenage accomplice wouldn't be a shocking sentence. But we don't have that here. But actually, counsel pointed out that your client not only was there for the initial kidnapping, but then two miles away and was harmed. And that makes this case different. Does it not? Well, two points there. First is I don't think his involvement was quite as bad as the State was suggesting. He was simply a lookout. Also, all of that evidence that the State cited came from the witness who recanted her testimony and who is the subject of the innocence claim and has been pending for 20 years. So Antonio has been seeking a hearing on that. So I think that, you know, of course this case doesn't have exact factual, you know, lineup with Leon Miller. What we're asking this Court to do is conduct a Leon Miller-like analysis and ask whether the fact that somebody who didn't actually personally kill someone but is subject to a mandatory life sentence, and there are now going to be 20-year-old defendants who did personally kill someone who will get parole after 20 years, is that unconstitutional? Is that disproportionate under our State constitution? So if Your Honors have no further questions, we would ask that this Court remand the case for a new sentencing hearing where the Court can consider all of the relevant factors before imposing a life sentence and for evidentiary hearing on Antonio's claim of innocence based on the recantation of the State's key witness. Thank you, Ms. Rosas. Counsel for the appellant, Ms. Gosher, you may proceed. Thank you. Defendant's agreed motion in the appellate court recognized that his claim in the trial court was premised solely on Leon Miller and had not relied on the scientific research that he cited in his briefs in the appellate court. And so the question of whether the trial court improperly dismissed defendant's postconviction petition at the second stage because it was legally insufficient rests solely on the trial record. None of the research was presented. This is not a batter about the evolving law. There has the legislature has looked at the science and decided in its judgment, in its policy judgment, that the science doesn't go as far as defendant would like. It doesn't necessarily mean that every young adult's culpability is so diminished like it would be for a juvenile, that a life sentence is unwarranted. That is the premise of the holdings in Miller. And I note that equating a 15-year-old to a 19-year-old has never been done under our law. The reason that juveniles have been treated differently under our law is because they have been for over 100 years. In Harris, this Court recognized that Roper, Graham, and Miller were premised on the societal recognition that has long existed in this country, that juveniles are constitutionally different for many purposes. We have drawn the line at 18 for many purposes, and only in certain circumstances has the legislature changed that line. The legislature is looking at the line now, and it is determining what should be made of that and how it affects individuals' culpability. But on the claim the defendant raised to the trial court in his post-conviction petition, the trial court was not required to consider the scientific research the defendant had not cited. So Leon Miller alone does not support defendant's claim. He was a juvenile. He was subject to mandatory transfer. His accountability was much less than that of defendant. And so we think that the trial court properly dismissed the claim under this Court's established standards for how it views as applied challenges to mandatory sentences. Counsel mentioned Eunice Clark's recantation as part of a sentencing argument. But that, again, is wrong, because Eunice Clark's recantation has never been tested. We don't know if she actually would recant. But more importantly, when we're looking at the trial record and determining whether his mandatory sentence is unconstitutional, the trial record includes her testimony about what defendant's actions were. And it lays the groundwork for how involved the defendant really was in these crimes and how he shared the motive for the crimes. And so his level of participation was that of an active participant. It's similar to that in Davis. This Court observed that even for a juvenile who actively participates, a life sentence might be appropriate, depending on those circumstances. Here, the circumstances show that the life sentence is appropriate as the legislature determined. More importantly, the legislature has very broad authority to set sentences in Illinois. This Court has repeatedly upheld lengthy sentences for adults, and it should, again, do so here to the extent it does not remand to allow defendant to develop his claim, which is based on other factual allegations. As for whether this should go for third stage or second stage, you know, as we've noted, the allegations were never made to the trial court, and it is for that reason that the parties asked for this case to be returned for second stage. The trial court has not heard any of this. The supporting documentation has never been presented to it. The scientific research hasn't been presented. There is a post-conviction process, and at the second stage, we test, we look at whether the well-pleaded allegations and the supporting documentation make a substantial showing of a constitutional violation. That has not occurred here. He has not presented the allegations that he rested on appeal to the trial courts. That's why the parties agreed that it needed to go back for second stage. I'd like to touch quickly on the citation to the Washington Supreme Court's decision. That is one court, Your Honor. Your Honors, there was a dissent, and as that dissent pointed out, no other states have gone this far. No other legislatures have gone this far for persons who are for murders. This is a very serious offense, and nobody has gone as far as the Washington Supreme Court has gone. And so while it is one additional factor, it certainly doesn't mean that our country has decided that 18- to 20-year-olds should be treated differently under the law. And then I'd like to quickly touch on the actual innocence claim. You know, I'd note that the Court has already declined to review this claim. Following the appellate court's 2015 ruling, Devena had filed a PLA. This Court declined to review the claim. You know, but however, the case has been on appeal, and defendant is pressing the actual innocence claim based on Robinson. And we think that in light of Robinson and also the intervening decision in Sanders, it's best for the lower courts to take the first crack at looking at how Robinson, which clarified the standards, applies to these circumstances. That is why we have asked the Court to decline to review the merits and send this back down. You know, and sending it back down for a second stage actually benefits the defendant, as he's noted. It's been 20 years since Junius Clark's affidavit, and so he can have an opportunity to amend the petition. And as he states in his brief, he can find additional evidence if he seeks to – if he has it. And so it would be more efficient for the Court to simply remand both claims back to the trial court so the defendant can amend his petition on both claims. Because the trial court clearly erred under Harris in granting postconviction relief to a defendant on his as-applied claim, which had been undeveloped in the trial court, and in light of this Court's intervening decisions in Robinson and Sanders, we ask the Court to vacate the appellate court's judgment on both claims and remand to the trial court for second stage proceedings on those claims. Thank you. Thank you, Ms. Koshyp. 5-124, People of the State of Illinois v. Antonio House, is taken under advisement as Agenda No. 1. Thank you, Ms. Koshyp, and also thank you, Ms. Bowser, for your arguments this morning.